BENJAMIN COSIO, AS ANCILLARY ADMINISTRATOR OF THE ESTATE OF PEDRO GUERRA, DECEASED, *Plaintiff in Error*, *v.* MARGUERITE GUERRA AND FRANCISCO DIAZ, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF VINCENTE GUERRA, DECEASED, *Defendants in Error.*

Opinion Filed April 7, 1914.

1. A writing relied on to revive a debt already barred by the statute of limitations should be susceptible to an implication of a willingness to pay at all events or upon a contingency that has happened.

2. A letter repudiating the idea that the barred debt is binding as a legal claim will not revive the debt.

3. A written declaration that a barred debt will not be paid until other large debts have been paid, and not even then unless it be entirely convenient to the writer, is not such an unconditional acknowledgment or promise to pay, as to revive the debt.

Writ of Error to Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*Wall & McKay,* for Plaintiff in Error;

*Sparkman & Carter* and *Jas. F. Glen,* for Defendants in Error.

COCKRELL, J.—There was a judgment for the defendants upon the pleadings, and the plaintiff takes writ of error.

The Guerra Brothers dissolved partnership in 1890,

and at the dissolution Vicente was indebted to Pedro. Upon this indebtedness he paid interest from time to time, the last payment having been made in August, 1902. Pedro died December 28, 1908, and Vicente about two months thereafter, and this action was begun in September, 1912.

The plaintiff admits he must fail, unless a certain letter written in Spanish by Vicente to Pedro in 1906, after the statute of limitations had run, be sufficient as an acknowledgment or promise to start the statute anew. A translation of this letter reads:

Tampa, July the 6th, 1906.

Mr. Pedro A. Guerra, Ruennes.

My dear brother Pedro:—I have before me your letter of the 16th of June and have read the same. We struck a balance and it is somewhat bad, given the condition of the crop we could not expect anything better, it leaves us nearly $3,000 free. I have not nor do I intend to send you anything at the present time. In order to come in and take part in the unfortunate Cuban-American I had to dissolve judicially the firm of Guerra & Brothers and when I left the Company the capital of G. H. (Guerra Brothers) was also dissolved, and this also I have settled judicially, calling through the newspapers any creditors that there might be, and as there were none, none came, and our firm was honorably liquidated and dissolved without capital.

To commence again I had need of God and help. I saw myself in danger of perhaps becoming a porter and my children to be compelled to 'strip' for a living; with a few dimes that 'Quico' had and $10,000.00 that was loaned to me by Messrs. Lopez & Co. of Caibairien, I was

able to commence again. With the losses consequent to all new enterprises and $10,089 that we lost in the West Tampa fire, I found myself very much behind the way I had commenced and now I am nearly arriving to where I was before I commenced.

We owe in the bank $35,500, to Aureliano and Manuel $10,000; plus interest, locally, for money deposited without interest, nearly another $10,000; however, for merchandise we owe very little, some $18,000. This raises and falls and I do not relate it to you with no purpose. That which is to the point is the other and that is the following, that until I pay Lopez & Company, the bank, and what I owe locally, I do not intend to send you anything. There is more, it would be a crime to pull out the few feathers that I may be able to grow, and I do not believe that you are in need. In adversity I learned to be a little hard and protect my retreat. You will lose nothing with me; but you will have to wait until I can conveniently give it to you.

I am yours, VICENTE."

Assuming that the letter refers to the outlawed debt, and is an acknowledgment that it once existed and had not been paid, we can not read from it an implied willingness and unconditional promise to pay. To the contrary it is rather a flat refusal to pay this debt until all others are paid, and as to the payment of these specified debts the record is silent, and even then the quondam debtor declares he will not contribute anything upon this account until it be entirely convenient; it smacks much more of a challenge than a promise.

Several cases from the Supreme Court of Iowa are cited to us by the plaintiff in error, but the statute of

that State materially differs from our statute, which merely limits the kind of evidence of the acknowledgment or promise relied on to revive the debt. In that State it is enacted that "Causes of action founded on contract are revived by an admission that the debt is unpaid, as well as by a new promise to pay the same," whereas Gen. Stats. 1717 merely declares "Every acknowledgment of, or promise to pay a debt barred by the statute of limitations, must be in writing and signed by the party to be charged." While there are respectable authorities holding under such a statute, that an acknowledgment of a debt may imply a promise to pay, yet an implication cannot be indulged if there be express language to the contrary. The old debt merely furnishes the consideration and the action must stand or fall by the terms of the new acknowledgment or promise. Tested by this rule it is manifest that the letter repudiates the idea of a recognition of a debt which the writer considers as binding upon him as a legal claim.

Citations might be made by the hundreds, but these would aid but little in the construction of the particular instrument we have to construe, and we feel safe in asserting that no court in jurisdictions governed by the Common Law and the Lord Tenderden Act would adjudge that this writing was an "acknowledgment" of a debt already barred.

Judgment affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.